Good afternoon everyone. Let's see, our first case for argument this afternoon is Torres v. Kijakazi. Mr. Weems. Yes, Your Honor, whenever you're ready. We're ready. So you can go on. Thank you, Your Honor. Robert Weems on behalf of Ms. Torres. And today, there are three issues I think in this appeal. The first is, can the district court find evidence of malingering when the ALJ did not? The second is, may the ALJ rely on bulk citations to the record in order to satisfy their evidentiary burden? And the third is, whether or not the ALJ properly discounted Ms. Torres' testimony? As you know, we've kept this as a very narrow set of questions. For Ms. Torres, we're looking at a closed period, about 38 months of benefits, which for somebody in her condition is somewhere in the neighborhood of $28,000. At the low end, obviously very important. Here, and we do think it has become an issue, that the court does need to resolve the conflict it identified in Gammon between its statements in Vasquez, which I think really today would be the statements that were made in Carmichael, and the court statements in Robbins. In Robbins, the court really correctly stated that if malingering is going to be the basis for the decision, that requires an express statement by the ALJ that either that is actually, that there is malingering occurring, and that the... Our review is De Novo, right? Yes, Your Honor. So, is it possible for us just to avoid this issue for this particular case? I think that the court could, potentially, if it wanted to, because it is De Novo review. I think it would not be a good policy to do so, because this is something that this use of the malingering is an excuse for, not having to apply the clear and convincing reason standard that the courts developed in connection with discrediting claimant testimony. Now, the ALJ didn't make any malingering findings, isn't that correct? That's correct. We feel that there were absolutely no findings of malingering, and that none of the evidence actually supports malingering. What you have is you have some excess pain testimony, or what folks call excess pain testimony, and then a district court judge picking up on that and saying, this is evidence of malingering, and therefore, I don't have to apply the highest standard that the court requires of me. And we are seeing this occurring among the district courts with more frequency than I think is healthy. People, and particularly people at the low end like this, every step along the way, when they get shut down, that's one more opportunity for a valid claim to be denied improperly. And as we know, taking just something like the front end of the social security system, 80% of the valid claims that social security admits eventually are valid claims are denied at the first end. People fall out if there's not a rigorous adherence to the standards along the way. So we do think that it is significant and important and that the court should address that conflict because Carmichael, when we think it misstates the law, and we do think that Robbins is a correct statement of the law. And quite frankly, I think reliance on malingering leads to a certain intellectual sloppiness, or at least potential for intellectual sloppiness. Certainly, if there's evidence and the ALJ is relying on evidence of an inconsistency between something, the court's jurisprudence has said it may do that. That is a clear and convincing reason, as long as it's supported by substantial evidence in the record, it should be upheld. Once this malingering is thrown out, and malingering does carry with it certain moral overtones, I do think it requires a lot of a showing, and we did point out that certainly in the early cases, it was just never enough to have somebody saying the guy's malingering and the ALJ relying on that one thing of its own. Could I ask you about one of the ALJ's bases for decision? So the ALJ thought that Ms. Torres didn't seek enough treatment or only sought conservative treatment for the IBS. Could you respond to whether you think that determination by the ALJ was proper? I do not think it was proper, and I think the easiest place to look for the answer to that is in the UC Davis medical records, and particularly those at 6-11 through 6-13. Because, one, this is 2014, so this is the end of the period we're looking at. It's clear that Ms. Torres still suffers from chronic diarrhea based on that record. And, two, we have something that's very unique in this record. It's that UC Davis and its discharge instructions actually talk about irritable bowel syndrome and how it's shown and what it involves. And all of the things that the ALJ is pointing to are all things that, when you look at the UC Davis record, it says you don't expect to find them. I'm not asking about testing. I'm asking about the treatment. I think the ALJ said she only sought conservative treatment and didn't get more treatment. Can you speak to that? What treatment is discussed in the UC Davis papers that you're referring to? Well, what I would say in connection with that, Your Honor, is there is no showing that there is any other treatment that she could have sought. And that is, in fact, what you see from the UC Davis discussion of IBS and its characteristics. We obviously put a lot more in our brief, but it's actually there in the record. Did you argue in your brief that there was no more aggressive treatment that she could have had? We're obviously going to external sources. But, yeah, there is no treatment for IBS other than using various laxatives, probiotics, things like that. It can't be treated surgically. She did what could be done, and there's not a single doctor in here who suggests there was anything more that could have been done that she didn't pursue. And she also, obviously, totally her life changed. She's home all the time, mostly stationary, having to stay somewhere close where she had very, very ready access to facilities in light of the IBS symptoms that she suffers. So I do not think that the ALJ actually presented any sort of convincing record. It is also clear that the ALJ just was factually wrong when he said that there were no reported symptoms of chronic diarrhea after March 12th because we do see her still seeking treatment in March 2014. And I'll just make the additional note that there does appear to be a gap in these records, which was acknowledged by the ALJ. With that, Your Honor, I have about two minutes left, so I'd like to reserve that. That's fine. Good afternoon, Your Honors. May it please the Court, my name is Margaret Lerkind, on behalf of the Acting Commissioner of Social Security. There is very little evidence to support claimant's allegations regarding IBS in this case. The relevant period spans about three years and two months. The first nine months of this period, claimant had a number of appointments to address gastrointestinal symptoms, and in March of 2012, she was referred to the gastroenterology department at UC Davis Medical Center where she met with nurse practitioner David Hamilton, who reviewed all of the diagnostic findings from various appointments that she had had and concurred with the diagnosis of IBS. He prescribed her a fiber supplement, a probiotic, and an antidiarrheal medication. And after that appointment, there is virtually no evidence to support her testimony that she had ongoing problems with IBS. There are no reports to medical providers that she had sudden bowel movements or frequent bowel movements, and there is no opinion evidence to support the need to use a restroom frequently during the day. What about the, I can't remember the woman's name, but her home health aide, I think it was, didn't that person provide pretty strong evidence that this continued to be a problem?  And the ALJ found that that statement mimicked the claimant's own subjective statements. And so, you know, under this court's case law, because the ALJ properly rejected the claimant's subjective symptoms, that's also a proper reason for rejecting the home health care aide's statement. Well, it seemed to me that none of the reasons that the ALJ gave really had much support in the record at all. I mean, I don't know if you'll have time to go through each of them. But, you know, this isn't the kind of condition that there would be a whole lot of, you know, there's certainly not going to be objective medical evidence, right? All you can do is just screen out other potential causes, and it doesn't sound like the commissioner is not disputing the IBS diagnosis. It's just a question of how severe are the symptoms that it causes. And it just seemed to me that each of the reasons the ALJ gave just didn't have, they were rather flimsy. Certainly, we agree that there's no objective test for IBS. It's considered a diagnosis of exclusion. But the ALJ did look at other things that the regulations provide for, which is mainly what kind of treatment she's received. So the kind of treatment, the frequency of treatment. But is there anything in the record that suggests that there was other treatment available to her? No, because there are no records of her returning to the gastroenterology providers. But how do we know that UC Davis didn't tell her, this is a very hard-to-treat condition. We're giving you everything there is to give you. If this doesn't work, there's nothing we can do. Well, that's not in the medical record. But one would expect, you know, if the medication that they prescribed her wasn't working, that there would be tweaking of the dosage. There would be, you know, there are a number of – Actually, I think, wasn't the medication changed? It was changed. There's one other appointment in 2014 with Nurse Practitioner Hamilton. But that is, there's a two-year gap period of time. But why would we assume that in the two years she got all the way better and then all the way worse again? It seems like she had it in 2011 and then into 2012 and then in 2014. Well, I don't think that that would be sufficient to preclude her from full-time work. I mean, if she had these periods where her conditions were stable with medication, that's not a reason to find work-related limitations stemming from her IBS. Of course, lots of people work all the time with IBS and are on medications and need to tweak them sometimes. There just isn't support in this record for her allegations. And I think it's important to note here that – Well, can I ask – you've said that a couple times now. What is it that you've seen in other cases that claimants have that she doesn't, to support this? For IBS, it's very – well, it's common that people are going in to discuss their medications a lot. It's also common – the most common thing I see is very strict dietary restrictions. That's kind of the first thing that people try with IBS. And there's also mental health treatment. Some people have a connection. The IBS is connected to anxiety levels or depression. If the ALJ was going to rely on her failure to seek more treatment, wasn't the ALJ supposed to ask why she didn't seek more treatment? I think that the ALJ – I mean, I think in both hearings, there was a lot of discussion for what her treatment was for her IBS. But the ALJ said, I don't believe that she still had the symptoms because she didn't go back to the doctor more. Where did the ALJ ever ask her, why didn't you go back to the doctor more? Well, I don't think the ALJ has the duty to ask that question. The claimant has the burden of proving disability. So what's SSR 96-7P? The adjudicator must not draw any inferences about an individual's symptoms and failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide. Aren't they supposed to investigate whether there are explanations? I think that SSR suggests that if the claimant provides explanations, like, for example, my medical insurance ran out and I was no longer covered, then the ALJ has to consider those explanations. But I think that the explanation has to start first with the claimant. Can I ask just a slightly different question on a different topic? One of the reasons the ALJ gave for discrediting or discounting her testimony was that after a certain point – I can't remember the exact dates – she didn't suffer any further weight loss or her weight had stabilized. Is there any medical evidence that says there's supposed to be weight loss associated with the IBS of the severity that the plaintiff described? Going outside the record, if you look at the background information on IBS, some people have weight loss and some people don't. Some people have IBS that's more of a combination between constipation and diarrhea. Some people just have frequent diarrhea. In this case, the claimant has alleged frequent diarrhea. There's no discussion of frequent constipation. The weight loss issue, I think, comes in when she first goes to UC Davis Medical Center for this appointment, and she says – she reports she's having weight loss, stomach pains, and frequent diarrhea. Nurse practitioner Hamilton notes that she's had a 30-pound weight loss from 2011 until March of 2012 at that appointment. Thereafter, throughout the rest of the time period, her weight stabilizes. That's what I summarized. My question to you was you're here to defend the ALJ's decision. One of the reasons the ALJ gave was that after that point that you just described, she didn't suffer any weight loss, and said that that's a reason to discount the severity of the symptoms she described. I'm asking is there medical evidence to support that because I didn't see it, and it just seemed to me the ALJ just sort of made that up out of thin air. I'm sorry for misunderstanding your question. Within the realm of digestive disorders in Social Security policy, ALJs frequently look at weight loss when there's diarrhea in a record. You can look at the listing 5.00, which lists all of the digestive disorders. IBS is not one of the listings, but in the introductory paragraph of that listing, it says for other digestive disorders not mentioned in this listing, the ALJ may consider weight loss in the record. But if weight loss isn't a feature of IBS, and she has IBS, why would you look for weight loss? I'm sorry. I said that weight loss can be a feature of IBS. In this case, for her it was because she reported it to the gastroenterologist at UC Davis. How do we know she wasn't just on a diet in that earlier time? I didn't see anything in the record that said that the earlier weight loss was because of IBS. Is there anything that says the earlier weight loss was because of IBS? There's nothing that says that she was on a diet. She goes into this clinic, and her complaints are stomach pains, weight loss, and diarrhea. And she says she's having diarrhea 12 times a day. I mean, I think it's reasonable that somebody would have weight loss if they were having diarrhea 12 times a day. Anything else? No, if there's no further questions. Okay. We have a little time for rebuttal. Thank you, Your Honor. I'll just touch on a couple of quick points that were raised by the inquiry there. Ms. Torres does take Effexor, which obviously addresses this question on being treated simultaneously for the mental that can be associated with IBS, and this occurred while on Effexor. It also, I think, is significant to note that, at best, the weight loss evidence is ambiguous, and I don't even think it's necessarily that. I don't think it is a correct statement to say that when she went in, she was complaining about weight loss. She was advising about weight loss, and that's different. And she was highly obese, and she really hadn't lost 30 pounds. The medical record shows it was about 18. So it's not that significant an amount of a weight loss, particularly given her size, and that she was throughout these times attempting to do things like home exercise programs that had been recommended to her. Absent that, what we do have, and we made the point previously, is we have an ALJ engaging in medical speculation. His medical expert said, I don't know enough about gastrointestinal. I can't say anything to this. If nothing else, he at least had the obligation to go and find out, send her off for a consultative exam or get a medical expert in to discuss that issue. However, I think, quite frankly, the actual evidence, you know, what the ALJ points to to discredit her is simply nothing more than not fully substantiated. Can I ask one last question before your time runs out? If we were to agree with your position here, what is the remedy that you're asking us to grant? All we ask that the district court, so I think all we can ask here, is for a remand back to the ALJ for further proceedings. I do think that certainly on the established record, if she is credited because she testified to the 10 to 12 per day, and the vocational expert said that if she's at 10 or 12 per day, she would not be able to work in the national economy, that the evidence in the record certainly would support a remand solely for the immediate calculation and payment of benefits. But we did not make that as an explicit request as part of our brief, so I would assume that the court would not feel comfortable doing that. Okay. Thank you, counsel. The matter is submitted at this time.
judges: PAEZ, WATFORD, FRIEDLAND